Good morning, Your Honors. Gretchen Nelson on behalf of the appellants and plaintiffs, and may it please the Court. This is a case that comes before the Court after a 13-day jury trial as to legal claims that have been presented on behalf of a class of consumers asserting claims against a company that manufactures homeopathic products that were sold over the counter. The legal claims went to the jury, and subsequently the District Court ruled on the equitable claims. The jury found in favor of the defendant. The Court, in ruling on the equitable claims, also found on behalf of the defendant. There was a subsequent motion for new trial, and we are here today as a result of those rulings. We have raised a limited number of issues on appeal, but they are significant issues, and most importantly, in our view, is the question of the jury instructions that were given to the jury. As we have explained in our briefs, there was a significant dispute over the use of the word in the instruction that was used to inform the jury as to what they needed to find to establish whether or not plaintiffs had proved their claim. And it all devolved down to the difference between cannot and do not. Grammatically, those two words are significantly different. If we were to ask E.B. White, I'm sure he could provide the Court with a far better explanation of the grammatical differences, but fundamentally cannot is a model auxiliary verb, and as a result, it can imply theoretical possibility or ability. As distinct from do not, which is simply an auxiliary verb that is appended to a verb to imply that something does not work. In this case, there was a... How was the case argued to the jury in relation to the use of these terms? In terms of the argument at the end? Is that what the Court is asking? Yes. It is correct that the Court, in denying plaintiffs the instruction they requested, allowed plaintiffs to argue that. And in fact... Argue what? To argue the fact that the product being utilized, or that a product that may provide some relief as a placebo, is not sufficient. And it is true, and the defendants have cited in their brief, that Mr. Gomez, in closing argument, argued that do not was cannot. The problem with that, as the Court well knows, is that the jury is instructed that argument of counsel isn't evidence. Argument of counsel is simply argument. And that, in point of fact, the jury is required to... And this is in the record. At 3 ER 458, the statement is made that arguments of counsel are not evidence. At 3 exhibits of record 451, the jury is instructed, you must follow the law as I give it to you, whether you agree or not. And the jury is also instructed to follow all of the instructions, and not to single out one or ignore others. So, while counsel may argue, at the end of the day, when the jury goes back to deliberate, they are presented with the jury instructions. And that's the law that they... What does California law and the federal law... What's the legal standard? For... Cannot or do not? The legal standard did not is the word that's used in the Casey instructions with respect to the... The California claims that went to the jury were a Consumer Legal Remedies Act claim and a breach of warranty claim. There was an additional Magnuson Moss claim. Those were the four claims... Three claims that went to the jury for decision as to the legal issues. And in the Casey instructions for the Consumer Legal Remedies Act, the instruction uses the word did not. So, there's not the use of the word cannot in the state law. Where did the whole idea of cannot come into the picture? The issue came about as a result of a decision by the district court on class certification, where the words were used that plaintiffs would proceed to prove their case that the products do not and cannot work. And I think the exact quotes are in the brief. And it devolved from that. And the defendants, very capably and ably, my opponent is a wonderful lawyer, picked up on that and began to drive the issue home that it has to be cannot. Ultimately, that became a part of the discussion between counsel and the court over whether or not cannot was appropriate or not. The defendants argued that cannot was the word that was required to be used because it was what was in the court's class certification order. And if the word do not was used, it would undermine the basis for the class certification. What do we do when I looked at the pretrial conference order? Correct. It lays out the elements of the various claims that are going to be tried. Correct. And it contains cannot. It does. What do we do with that? Well, that simply is another extension of what ultimately we are claiming was the incorrect ruling by the lower court on the question of the jury instruction. The proposed pretrial conference order that was submitted by the parties jointly had plaintiffs' position and defendants' position. This is in the supplemental excerpts of record that the plaintiffs submitted to the court. And in that, plaintiffs used the word did not. The defendants used the word cannot. And ultimately, the court elected to use the word cannot. That was in what? That was in the proposed instructions? What was that in? That was actually, Your Honor, in the proposed final pretrial conference order that was submitted jointly by the parties in early August of 2015. Ultimately, the court made a decision on that, and the decision was the word cannot. There is no question, and I think the defendants would like to argue that we have waived this issue. I think it's fair to say this issue was teed up and was front and center at many points in time. And as a result, in our view, ultimately the decision that the court made to use the word cannot. Let me ask you this. Sure. Was the district court's class certification order tied to this whole idea of cannot? In other words, in order to make sure that if you prevail, that there would be no individual concerns? To make it just crystal clear that the products are basically worthless so that each class member could recover. To answer that question, I think it is fair to say that was the court's belief. If the question is posed to me, I don't believe that that is, in point of fact, an appropriate analysis as to class certification. In other words, I don't think that the use of the word do not would undermine the court's class certification ruling. Because do not brings into the equation this court's prior ruling in the Pantron case, the FTC case, that if something is simply working as a placebo, the person may think it is, but it's not. And to sell a product that provides relief that is simply based upon its placebo effect is consumer fraud. And so in my view, the use of the word do not would have not undermined class certification. I think it is absolutely fair the court felt it would. But if you turn and if you take that and move it on to the other jury instruction that plaintiffs argued was necessary to cure any adverse effect of cannot, plaintiffs sought an instruction that would make clear to the jury that a product that is simply acting as a placebo should not be considered effective. That was the placebo instruction that the judge. Correct. Correct. And that instruction was rejected by the court. The court did allow, as I think your honor asked earlier in terms of argument, the court did allow plaintiffs to argue that a placebo is not an effective product and can't, should not be used as grounds for allowing someone to sell a product saying it's going to relieve, alleviate your cold or your cramps or your teething problems in your babies. If all it's doing is. Do the the California pattern instruction to recognize placebo instruction as standard instruction that should be given. I don't believe so. Although I will say to the court, I have not researched that issue. I'm not aware of that. The issue of the placebo. What did you depend on cases that say in certain circumstances, the placebo instruction should be given. What we relied upon, your honor, is the decision by this court in the FTC versus Pantone one corp. And that is at thirty three F third ten eighty eight. That was not a jury trial. That was a bench trial. But there the court in its holding stated that a product that simply provides relief as a placebo. Does not support or it cannot be sold as being effective. And so that instruction, a special instruction came from this court's decision in the Pantone case and was requested to try to alleviate the concern. That had arisen as a result of the court's view that cannot was the appropriate word to use in the instruction on the elements of the claim. And I want to stick with the Canada for a minute and tell you how I see how this problem developed. And then you tell me where I'm wrong or where where I'm what I'm missing. I'll always tell you back at the rule twenty three stage. The issue came up whether or not there would be individualized issues. If they were, then there could not be a class. Sort of. So to avoid that problem, the the way the pleading your pleading had been cast was do not and cannot work. So the judge picked up on the cannot part and and said, as a matter of science, if this cannot work, then the entire class could benefit from that that theory and we can have a class. So that's the that's the whole premise on which the class was certified. OK, now we go forward to trial. And at the time of trial, the judge sticks to that. You got to prove as a matter of science that it cannot work. And then you say, no, maybe and maybe that's too hard a standard. And and so but that's what the judge had decided at rule twenty three. So if we're going to back off of the the cannot standard, maybe we have to say there shouldn't shouldn't have been a class in the first place. So I can see I've had this very problem myself many times as a district judge, that the theory changes between rule twenty three and the time of trial. So I think the judge was sticking to what the theory was that was presented for how to avoid the individualized issues and trying to make it fit the circumstances of the case. All right. So I've taken too much time, but that's the way I see this piece of the problem. So and I think you disagree with that. So I'd like to give you a chance to tell me why you do. I am happy to to respond. I would like to reserve a few minutes for if that's OK. Thank you, Your Honor. You are correct. This we went down this rabbit hole starting with class certification. Actually, the district court's classification order used the words do not and cannot in the order as to how plaintiffs would the common issue that would be effectively applied to the class. Having do not and cannot, as the case developed, as the court is absolutely right, district court's job is the hardest in the world because cases are developing and you're having to make decisions as they are moving along on a continuum. But ultimately, the court's decision was to simply use the word cannot and to not use the word do not, believing that cannot drove her decision when, in point of fact, both words were used, do not and cannot. But wouldn't you be better off with just one requirement than two requirements? So in other words, the judge cut it down to just one thing he had to prove instead of two. No, I don't think it's a question of two. I think it's a question of one or the other, ultimately. And as a result, the concern Your Honor has just expressed, which is that there would be some concern that the class would wind up being uncertified or decertified in the middle of trial. In my view, the use of the word do not in a class certification order made clear that do not would work. And so then you come to the question ultimately of whether or not this, in this particular instance, the court's decision to simply use the word cannot and not use the word do not ultimately resulted in the jury being misinstructed. That decision led to ultimately the court's equitable findings, which the court said, I'm bound by what the jury did in the legal findings. We don't. That is pretty common law, constitutionally based, and ultimately led to the denial of the new trial. But it all starts to flow down from the words do not and cannot. And in our view, the appropriate word was do not. If you're going to use cannot, then you have to add the additional instruction on the placebo. It looks like this district judge, if she had used the word do not, you wouldn't have a class, the class wouldn't have been certified. The court used the word do not in the class. Well, only do not. That's where I disagree. It looks like that's a whole other issue. Correct. That's correct. I mean, the district court could have instructed on do not in the instructions, and then there could have been a motion to decertify before entry of a judgment. That is correct. And that could ultimately have been the outcome. That outcome still would have resulted in or would have ultimately resulted in some decision by the jury. There would have then been the equitable claims that the court could consider. And then there would have been a big fight about whether or not decertification was appropriate. That's correct. I can let you go over your time, and I'll give you some time for rebuttal, but let's hear from the others. Very good. Thank you very much, Your Honor. Good morning, Your Honor. This is Jeffrey Margulies for the defendants. Do not versus cannot. Well, cannot came from plaintiff's complaint. Plaintiff's complaint, as the court will recall from the record, said these products cannot work because there's no molecules of anything there. Well, it was do not and cannot. Well, I didn't know what the complaint said. Do not and cannot. And cannot. But they do not because they cannot. They affirmatively took on a burden to prove a negative. The products do not work. And their choice of doing it in the complaint and in Dr. Rose's declaration in support of the class cert motion was that they do not because they cannot, because homeopathy is biologically implausible. And when we argued class certification, we had at that time 12 products with multiple ingredients in them, and one of the arguments was there's no common question. You know, we have different ingredients. We're going to have to look at each product. We're going to have to look at each ingredient and decide does this relieve the symptom that it's represented to relieve. And the court, the district court, said no. The theory here is that they can't work because they're homeopathic. That was the underpinnings of the district court certification order. And at the end of the day, as. . . So was that consistent with the pleading, with the complaint? Yes, and that's where we. . . And we cited in our brief, and it's in the supplemental excerpts of record, or it may have been in the excerpts of record, the exact paragraphs from the complaint as to each of the products at issue. Because of these stupendously high dilutions, I believe was the language, the products. . . There's not a molecule there. cannot perform as advertised. Why did that become the legal standard that was given to the jury? Pardon me? The legal standard. Well, the legal standard. The legal rule that was given to the jury. The legal rule that was given to the instruction. In the jury instructions. Right. The instruction was a standard Consumer Legal Remedy Act, standard Breach of Warranty Act instruction. But it changes out due. That was. . . But due. . . Well, no. If you look at it, it's cannot. Well, but a standard Consumer Legal Remedy Act instruction would be that the representation was made and the representation was false or misleading. That's the law, and that's in the instruction. What the district courts did was to feather in the factual. . . The representations were false because the products at issue cannot relieve symptoms as represented. Correct. So that became a legal test. It was a. . . I'm sorry. Judge Tashima has a question. No. Now, did the defendant argue then to the jury that cannot is different from do not? No. No. What was just the nature of the defendant's argument on that instruction? That when we. . . Because the plaintiff argued it, too, so I assume you would want to come back some way. The plaintiff said, you know, the product cannot. . . The only effect is a placebo. This is at 1 S.E.R. 35. The only effect is a placebo, and the products cannot work, do not work, do not equals cannot. The defense did not argue the issue of what do not versus cannot meant. That was not. . . The defense's closing argument was there's abundant evidence in the record to show that homeopathic products do work, can work, placebo-controlled studies, et cetera. The plaintiff's evidence was simply their experts not believing that evidence, and therefore the plaintiffs hadn't met their burden of proof. Is there any. . . Let's just take the California Legal Remedies Act. Is there any case law that sanctions the use of the term cannot or can't? Again, if one were just giving a standard, just a statement of the law, the statement would be the defendant made a representation. The representation was false or misleading, and the plaintiff was injured. That's the Consumer Legal Remedy Act. So why couldn't you just submit some special findings to the jury? Well, the. . . You have all the scientific evidence. You can submit some questions to the jury, you know. I guess our position would have been if the court had intended to give a completely vanilla legal instruction, false representation, false or misleading representation relied upon by the plaintiff to injury, our position would be that because it's a class, because there's a certified question, the court must instruct the jury what that question is. And so there would need to be a second instruction that says, in this case, you must find the representation is false. Well, the judge could submit special findings or ask the jury to make special findings on the issues that relate to the class. That could have been done. Yes, it certainly could have been done. The judge's preference was to simply wrap the class cert into the instruction. You know, the jury instructions are supposed to represent the law. And I believe that this accurately does state the law, and it accurately states the fact that was certified. It may state the plaintiff's theory, sort of overall theory of the case. That is, these homeopathic products do not work. And, ladies and gentlemen, we're going to present you scientific evidence that they cannot, and you're going to return a verdict in our favor. And I believe that's what they said. Well? I believe that's exactly what they said.  Well, no, it becomes the certified question that has to be answered by the jury in order to find liability. There are other ways of getting that answer, if it's critical, to ensuring that the class action aspects of the case are respected under Rule 23. And I don't disagree with that, Your Honor. I don't believe, however, that as an issue of instruction formulation, that it's an abuse of discretion to combine them into one, nor do I believe there's a misstatement of the law in the instruction that the court gave to the jury. I also gather that neither side suggested that special interrogatories be submitted to the jury on this question. I believe that we had, in fact, requested special interrogatories, and I don't recall, Your Honor, precisely. But they weren't given. It was a special verdict form that we requested, and the court wanted to have a general verdict, but then as to each product that was at issue. Let me ask you a little bit of a different question, a follow-up question. If, speaking hypothetically, we were to conclude that the instruction was erroneous, in other words, the use of cannot was erroneous under California law, then the burden falls to the defendant to show that that error was harmless or not harmful, right? Can you make a case that it's not harmful? In other words, I don't know, in this case, it seems like you're arguing it's the same thing. Well, let me address the premise of that respectfully, Your Honor, and we briefed this in our brief. The Shinseki Supreme Court decision, I believe, casts significant doubt on the Ninth Circuit precedent on the presumption of prejudice. Having said that, I think, first of all, you have Mr. Gomez, plaintiff's counsel, when we argue this instruction, telling the court it's just semantics. In other words, and you heard today, you read in their brief, their articulation of why this was erroneous is abstruse grammar that we can't, I mean, I don't even understand auxiliary or helper verbs. I can't imagine that a jury is confused by this. Number two, Mr. Gomez completely cleared the issue up and explained the theory that they were going on in front of the jury. The jury cannot means do not, or do not means cannot, pardon me. And the jury clearly understood the whole issue of what the plaintiff's theory was, and nobody did anything to mislead them into thinking that it was okay, that we were okay with a placebo effect being the basis of the effectiveness of the product. Did placebo effect come up in the evidence before the jury? Yes. How did it come up? The plaintiff's experts testified that their opinion was that the only effect of the drugs was the placebo effect, number one. Number two, there were extensive discussions of numerous placebo-controlled trials in which the homeopathic material was compared to a placebo and was shown either to be more or less, more beneficial or not. Would this have been a possibility in the jury room, that the jury could have gone in there and said, well, we have to decide whether or not these cannot work. But we heard that there are some patients who think they work, and therefore psychologically they do work, the placebo effect, and therefore it hasn't been proven that these cannot work, since the placebo effect. Could the jury on its own have reached out for the placebo effect as a rationale for justifying the product, given that the word placebo was used in the trial evidence itself? Could that have happened? I think you'd have to speculate to reach that conclusion. There was nothing done by the court or by the defendant to suggest that was an appropriate standard. The defense argument was always that there was evidence that the products were effective and that the effects were not due to the placebo. But Judge Alsop's question does contain the seed that maybe it would have been better to give a placebo instruction, huh? That was, I mean, we would have asked, we asked as well for an instruction that explained what the plaintiff's burden was, and I think it would have been one-sided to give one instruction on the explanation of the effect of evidence. I mean, the court didn't give any instructions on what the evidence meant. But there was nothing done in, there was nothing put in front of the jury that would suggest that they somehow went, you know, often said what Judge Alsop was hypothesizing might have happened in the jury room. That issue was never put in front of them. Well, that's true, and I think that's true from this record. But when trial judges try to give instructions, we sometimes on our own see, hey, the jury could do this off-track reasoning on their own, so let's head that off with an instruction. Do you agree that the placebo instruction was a correct statement of the law? It was not a statement of the law at all. What was it? It was a statement of fact. It was the plaintiff's will to meet their burden. It was an explanation of the effect of evidence. No, I thought the placebo instruction was meant to say a placebo effect is not enough to show effectiveness. But the burden was not on the defendant to show effectiveness. The burden was on the plaintiff to show lack of effectiveness under the King-Bio Pharma case and the Kwan case in this court. Okay, but nevertheless, was the proposed placebo instruction one that would have said a placebo effect is not enough to show effectiveness? I'm not sure it was quite framed that way. I did not have any argument with the instruction of that instruction at the time the plaintiff's proposed it. It didn't say anything that I thought was incorrect. Right. Did you want to address any of the other issues that were raised? I'm checking my notes just to see what was raised. On the very last point that you raised about the UCL and the FAL, it is true that the UCL and the F, the advertising law, false advertising law, they have a broader scope than the CLRA. I think you would have to agree with that. Maybe you don't, but if that's true and if you agree with that, would the implicit findings by the jury be enough to automatically wipe out the possible equitable relief under the UCL? Right. I think the FAL is coextensive with the fraudulent prong of the UCL and most of the CLRA claims. The UCL does have the additional unfair and unlawful prongs. What is your answer to? In this case, the answer is the same theory. If you look at the trial brief that was submitted by the plaintiffs, if you look at the pretrial order, every claim was premised on the same theory, that there's a misrepresentation, the products are effective, and that misrepresentation is false because they're homeopathically prepared and therefore they cannot be effective. In this case, they all derive from the same theory. If you look at what the plaintiffs urged the district court to do in the motion in their post-trial briefing as to why the court didn't need to follow the jury's instructions, the jury's determination, they quoted to a number of issues that the court had expressly declined to certify. Those issues were not ripe for a class determination at that point. Okay. Thank you very much, Your Honor. Thank you. Very briefly, Your Honor, and thank you for allowing some rebuttal. There are a couple of points that I would like to make, and that is that as to the point that my esteemed colleague just made regarding the Supreme Court's decision in the Shinseki v. Sanders case, which is a case that addressed VA benefits and administrative rulings, the statement is made that that has called into question whether or not this Court's prior rulings in the Obrey case are valid. I would only point out that in their briefing, defendants have argued that this Court has subsequently had one decision where in a footnote the question was raised and not answered by this Court. I would point out the two following cases, Jules Jordan Video v. 144942, Canada, and that's at 617 Fed 3rd, 1146, and the pin site is 1159. U.S. v. Bailey at 696 Fed 3rd, 794, and 2012. In both of those cases, this Court has continued to adhere to its view that there is a presumption of error when an instruction is given that is an incorrect statement of the law. On the placebo instruction, where can we find the exact wording of what the plaintiff suggested be given to the jury? I will read it to you exactly, Your Honor. Please. It is in determining whether plaintiffs met their burden in establishing their claims, you may not take into consideration the placebo effect in determining whether defendants' products provided relief, and that's at 4ER5C63-64. I'm sorry. The page is what? 4ER what? 56364. 56364. Thank you. Correct. And that, I think, is as it was being read to the jury from the transcript. And that is... It wasn't read to the jury. That was your whole point. I'm sorry. That's right. That was ours. I apologize. I'm sorry. That was proposed. That was proposed. Correct. I apologize. I was thinking of the instruction on the elements of the claims that we talked about, cannot and do not. But that is the instruction that was requested and rejected. The... Can I ask you a question? Sure. Your opponent said that the old trial was kind of like the Scopes trial, that the issue was homeopathy and is it valid or not. Is that a correct statement? I think it is a correct statement that the focus of this case was that the defendants were selling a product that did not do what the defendants claimed it would do. And the issue then became whether homeopathy does provide relief. The testimony, counsel is correct, there was testimony on the placebo effect. The only testimony from the defendant as to these products being useful came from a gentleman, Dr. Merizaldi, who treats patients with psychosomatic problems. And other than that, the other testimony was that two random controlled trials that were conducted, there was dispute over whether they were valid or not, but ultimately the testimony was that in both of those trials, the products did not work any better than a placebo. And so that was the overarching issue in terms of the placebo. Judge Alsup, you raised the question of whether or not the jury might, going back in the jury room, find themselves struggling with the word cannot and the placebo. And I believe that is what happened. I can't say that. No one can. I believe that probably is the underpinning of the court's concern where there's an error in an instruction because you can't really go back and find out what the jury is doing. You can only just have to take what is presented before you and determine whether or not there was something that infected the decision as a result of how they were instructed on the law. When the word placebo came up in the trial evidence, it sounds like it came up in a way where the jury understood that if it was merely a placebo effect, it had to be more than that, so placebo effect was not good enough to be effective. In other words, comparing it to placebo, if there's no difference, then it's not effective. I think it's fair to say that was our position. I don't think the defendant's position on this has been that they are effective, that you can get... But did the defendant ever argue, hey, look, there's a placebo effect, so that alone is enough to justify these drugs? I do not believe they ever did that. They drove home the word cannot in their argument, and it was Mr. Margulies, he did a wonderful job, but that word cannot... What do you mean by drove home? Can you give me an example? Sure. In his argument, he was arguing that these, that the standard is they cannot, and they, in his view, he said there's evidence that they can. So the word cannot came about throughout his argument in the contrast of can, and that leads you then down to the whole of the question of placebo. Okay. Thank you. Very good. Thank you very much, Ron. Thank you. Thank you for the fine arguments this morning. It was very nice. And interesting case, and the matter is submitted.  Thank you, Ron.
judges: Tashima, Paez, Alsup